IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GINMAR CORPORATE PROMOTIONS, INC., *et al.*, | ) ) ) | |
| Plaintiff, | ) ) | CASE NO.  08 CV 4109 |
| v. | ) ) | Judge John W. Darrah Magistrate Judge Cox |
| CARDINAL HEALTH, INC. | ) ) | |
| Defendant. | ) | |

### DEFENDANT CARDINAL HEALTH INC.'S
### MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE

Defendant Cardinal Health, Inc. ("Cardinal Health") by its attorneys, respectfully submits this Memorandum in Support of Its Motion to Transfer Venue. This dispute more properly belongs in the United States District Court for the Southern District of Ohio (the "Ohio Court"). Cardinal Health initiated an action against Ginmar Corporate Promotions, Inc. ("Ginmar") before Plaintiffs filed their complaint in this matter.  That action is now pending in the Ohio Court. Moreover, most of the facts, events and witnesses involved in this suit are in Ohio, not Illinois. Therefore, the Court should grant Defendant's motion and enter an order transferring this action to the Ohio Court.

### INTRODUCTION

In an effort to resolve its dispute with Ginmar, Cardinal Health filed a complaint in the Ohio Court. (Complaint, *Cardinal Health, Inc. v. Ginmar Corporate Promotions, Inc.*, Case No. 2:08 CV 697, attached hereto as Exhibit 1)(hereinafter the "Ohio Complaint").  The dispute at the center of Cardinal Health's suit involves a now properly terminated "Promotional Products

Agreement" between Cardinal Health and Ginmar ("Agreement") for the supply of custom promotional products such as awards, momentos and specialized company apparel.

In Cardinal Health's complaint, it seeks a declaration that Cardinal Health substantially performed its obligations under the Agreement, which was neither a requirements contract nor an exclusive contract with a minimum purchase requirement. Plaintiffs' complaint herein is essentially a breach of contract action that requires resolution of the very same questions as the ones posed by Cardinal Health's lawsuit: did Cardinal Health substantially perform its obligations under the Agreement and was the Agreement a requirements contract or an exclusive contract with a minimum purchase requirement. These basic issues permeate all of Plaintiffs' claims in this case. Thus, a final determination from the Ohio Court in Cardinal Health's lawsuit will fully resolve the issues raised in both parties' actions.

In addition, the overwhelming majority of facts and circumstances related to these two lawsuits reveal multiple connections to Ohio, not Illinois. Cardinal Health's principal offices are located in Dublin, Ohio. Most of the meetings and events Plaintiffs reference in their complaint were held in Ohio, not Illinois. The majority of the potential witnesses are either current or former employees of Cardinal Health and the majority of the Cardinal Health employees who have been identified in Plaintiff's complaint lived and worked in Ohio. Of those potential witnesses no longer employed by Cardinal Health, many are believed to be still residing in Ohio and cannot be compelled to appear in Illinois as witnesses to confront the accusations Ginmar has made. Accordingly, instead of being brought in this separate, much less convenient venue, Plaintiffs' claims are more appropriately heard as compulsory counterclaims to the Cardinal Health suit in the Ohio Court.

**BACKGROUND FACTS**

Plaintiff Ginmar is an Illinois corporation with its principal place of business in Illinois. (Compl. ¶ 6, 7)   Plaintiff Gina Cantave is the owner of Ginmar and is a resident of Illinois. (Compl. ¶ 3, 7)   Defendant Cardinal Health is an Ohio corporation with its principal place of business in Ohio. (Compl. ¶ 7)

***Ginmar and Cardinal Health Enter Into A Promotional Products Agreement***

Under the Agreement, Ginmar agreed to provide Cardinal Health with custom promotional products.  (Ohio Compl. ¶ 8)   Plaintiff Gina Cantave executed the Agreement as Ginmar's Vice-President of Sales and is identified in the complaint as the Company's sole owner. (Compl. ¶ 19)   The Agreement's one year term commenced on June 1, 2005 and was renewable automatically for successive one year terms unless one of the parties delivered notice at least 120 days prior to the end of the period.  (Ohio Compl. ¶ 10, Agreement, Section 6)   The Agreement also provides that either party could terminate the Agreement for any or no reason on 120 days notice.  (Ohio Compl. ¶ 11, Agreement, Section 7)

The Agreement contains no exclusivity or requirements provision that would have obligated Cardinal Health to purchase all of its custom promotional products from Ginmar. (Ohio Compl. ¶ 15)   Nor does the Agreement contain any sales volume guarantee.  (Ohio Compl. ¶ 16)   Instead the Agreement simply provides that Ginmar would "(1) provide custom apparel and hard Products; (2) distribute the Products as requested; (3) provide Ginmar's standard management information reports pertaining to Products purchased by Cardinal Health and monthly savings reports."  (Agmt. ¶ 1, attached hereto as Ex. 1 to the Complaint)

The Agreement also provides that the language set forth in the Agreement comprises "the complete and exclusive agreement and understanding between the Parties concerning the subject

matter of this Agreement which supersedes all prior understandings, negotiations and proposals, oral or written. No modification, amendment, waiver, consent or discharge in connection with this Agreement will be binding unless it is in writing and signed by both Parties." (Agmt. ¶ 13C)

### Ginmar Claims That Cardinal Health Must Deal Exclusively With Ginmar

Some time after the parties signed the Agreement, Ginmar notified Cardinal Health that it believed the Agreement obligated Cardinal Health to purchase promotional products exclusively from Ginmar and that Cardinal Health's occasional purchase of products from other vendors was a material breach. (Ohio Compl. ¶¶ 18-21) Ginmar also asserted that despite multiple purchases of its products by Cardinal Health, Cardinal Health was obligated to purchase more; at least $1.5 million in promotional items and that Cardinal Health's failure to purchase a certain minimum volume was a breach of the Agreement. (Ohio Compl. ¶¶ 21-26)

### Cardinal Health Files An Action in Ohio

Cardinal Health filed an action against Ginmar on July 18, 2008 seeking to clarify its right to deal with other vendors of custom promotional products without committing a breach of the Agreement. Cardinal Health seeks a declaratory judgment in the Ohio Court that, among other things, the Agreement is not a requirements contract, contains no exclusivity provision obligating Cardinal Health to purchase certain custom promotional products only from Ginmar and did not require Cardinal Health to purchase a certain minimum volume of custom products. (Ohio Compl. ¶¶ 32-33) Cardinal Health seeks a further declaration that it substantially performed its obligations under the Agreement and has no further obligation to Ginmar. (Ohio Compl. ¶ 34)

*After Cardinal Health Files Suit, Ginmar Files The Instant Lawsuit*

Plaintiffs' complaint emanates from the contractual relationship between Ginmar and Cardinal Health as set forth in the terms of the Agreement. The gravamen of Plaintiffs' complaint is that the Agreement was an exclusive requirements contract which Cardinal Health breached because it did not buy all of its promotional products that were subject to the Agreement exclusively from Ginmar. (*See* Complaint ("Compl.") ¶¶ 40-44). That basic claim and the remainder of Plaintiffs' allegations and causes of action rest on one basic premise -- that the Agreement was an exclusive, "requirements" contact. Specifically, Plaintiffs allege that "Cardinal and Cantave [on behalf of Ginmar] signed an exclusive agreement." (Compl. ¶ 21), and that "Defendant breached the exclusive requirements contract with Ginmar by placing orders for custom professional products with suppliers other than Ginmar." (Compl. ¶ 106)

## ARGUMENT

Transfer of venue under 28 U.S.C. § 1404(a) is appropriate when (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interests of justice. *See St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp.*, No. 05 C 5484, 2006 WL 1543275, at *1 (N.D. Ill. June 1, 2006) (citing *Schwarz v. Nat'l Van lines, Inc., 317 F. Supp. 2d 829, 833* (N.D. Ill. 2004)). Here, transfer of Plaintiffs' action to the Ohio Court is not just appropriate, it also would be in the best interest of justice.

First, Cardinal Health filed its action in the Ohio Court before Plaintiffs filed their breach of contract action here in Illinois. Since there is a prior pending action in the Ohio Court which raises the very same issues that are at the center of Plaintiffs' complaint, the Court should transfer Plaintiffs' action to be heard as counterclaims of Cardinal Health's action. Second, all

of the facts and circumstances of the dispute between Ginmar and Cardinal Health all weigh heavily in favor of the transfer of this action to the Ohio court. The sole factor weighing in Ginmar's favor, that the action was filed in Illinois court by Illinois residents, falls far short of counterbalancing the number and collective weight of the factors relevant to this dispute, each of which favor the transfer of this case to the Ohio Court.

## I. GINMAR'S ACTION SHOULD BE HEARD AS COMPULSORY COUNTERCLAIMS TO THE ACTION CARDINAL HEALTH FILED FIRST IN OHIO

In its complaint, Cardinal Health specifically seeks a determination of whether: (1) the Agreement is a requirements contract under Ohio law; (2) the Agreement obligated Cardinal Health to purchase promotional items exclusively from Ginmar; (3) the Agreement required Cardinal Health to purchase a minimum annual volume of Ginmar's promotional items and (4) Cardinal Health substantially performed its obligations under the Agreement. (Ohio Compl. at 7.)

In the complaint they filed in this Court, Plaintiffs pray for various forms of relief based on multiple legal theories -- all of which stem from Cardinal Health's alleged breach of the Agreement. Plaintiffs call the Agreement an "exclusive, requirements contract," and contend that Cardinal Health's purchase of products from suppliers other than Ginmar and its failure to purchase a certain minimum amount of promotional products from Ginmar amount to a breach of the Agreement and tortious conduct.

The issues to be addressed by the Ohio Court in Cardinal Health's action are threshold questions that must be resolved before reaching Plaintiffs' claims. The claims that comprise Cardinal Health's complaint are essentially the mirror image of those in Plaintiffs' complaint. Normally, "[w]hen two similar actions are filed, the general rule favors the forum of the first-

filed suit." *Schwarz v. National Van Lines, Inc.*, 317 F.Supp.2d 829, 832-33 (N.D. Ill. 2004). The first-filed rule applies unless matters of convenience or other circumstances suggest otherwise. *Campbell Software, Inc. v. Kronos, Inc.*, No. 95 C 7348, 1996 WL 124457, at *4 (N.D. Ill. Mar. 19, 1996). Here, all other factors suggest that the more convenient and appropriate forum is in the Ohio Court. Accordingly, there is no reason to set aside the first-filed rule and Plaintiffs' action should be transferred to the Ohio court.

## II.    JURISDICTION AND VENUE ARE PROPER IN THE OHIO COURT

The Ohio Court has jurisdiction over Plaintiffs' action and venue in the Ohio Court is proper.[1] The Ohio Court indisputably has personal jurisdiction over the parties. A court has general jurisdiction over a party that has "continuous and systematic contacts with the state in question" and has "specific jurisdiction" for those "controversies that arise out of or are related to the defendant's forum contacts." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Defendant Cardinal Health resides in Ohio. Plaintiffs may reside in Illinois, but during the relevant period Ginmar maintained a sales representative in Ohio to work with Ohio customers like Cardinal Health (Compl. ¶ 65) and regularly conducted business with Cardinal Health in Ohio by supplying promotional products to Cardinal Health employees at its office in Dublin. Plaintiffs' own complaint is replete with references to activity conducted in Ohio which gave rise to Plaintiffs' claims. (Compl. ¶¶ 26, 32, 36, 64, 65, 66) And, just as this Court does, the Ohio Court has subject matter jurisdiction over Plaintiffs' action, founded on diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332. (Compl. ¶ 7)

In a diversity action, venue is proper in a judicial district "where any defendant resides" or where "a substantial part of the events or omissions giving rise to the claim occurred." 28

---

[1] Cardinal Health does not dispute that venue is also proper in this Court.

U.S.C. § 1391(a). For venue purposes, a corporate defendant "shall be deemed to reside in any district in which it is subject to personal jurisdiction at the time the action is commenced." *Id.* § 1391(c). As noted above, Cardinal Health is a resident of Ohio and as set forth in more detail below, most if not all of the events material to the parties' dispute and Cardinal Health's alleged breach of the Agreement took place in Ohio. Therefore, the Ohio Court has jurisdiction over Plaintiffs' action and venue there is proper.

## III.    TRANSFER TO THE OHIO COURT WILL SERVE THE CONVENIENCE OF THE PARTIES AND WITNESSES

"In evaluating the convenience of the parties and witnesses…a district court considers: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties." *Brother Int'l*, 2006 WL 1543275, at *1. When applied to Plaintiffs' action, all of these factors weigh heavily in favor of a decision to transfer this case to the Ohio Court.

Ginmar's desire to litigate the parties' dispute in a state where it is located is outweighed by the overwhelming body of facts favoring the litigation of this case in Ohio. Ginmar's own complaint shows that the material events which form the bases of each party's claims took place in Ohio and involve Cardinal Health employees who are employed, and in most cases reside in Ohio.

### A.    The Material Events Underlying the Parties' Dispute Occurred in Ohio

The usual deference given to a Plaintiff's choice of forum is reduced when the operative facts that give rise to the action occur in another district. *See Papapetrou v. Boeing Co.*, No. 07 C 5892, 2008 WL 548770, at * 5 (N.D. Ill. Feb. 25, 2008)("the weight given to a plaintiff's choice of forum is lessened if the chosen forum has relatively weak connections with the operative facts giving rise to the claim")(citing *Von Holdt v. Husky Injection Molding Systems, Ltd.*, 887 F.

Supp. 185, 188 (N.D. Ill. 1995)).  A review of Plaintiffs' complaint demonstrates that most of the

material events related to the parties' dispute occurred in Ohio.  As but a few pertinent examples:

- Plaintiffs allege that Cardinal Health invited Ginmar and its principal Gina Cantave to bid on an exclusive three year contract to provide all of its requirements for promotional products at a 2004 meeting in Dublin, Ohio. (Compl. ¶ 26)

- Plaintiffs also assert that it was at a 2004 presentation in Dublin that Cardinal Health announced that Ginmar had been given the opportunity to bid on a contract and that at that meeting, Cantave spoke to the Dublin, Ohio audience and acknowledged Cardinal Health's offer. (Compl. ¶ 32)

- Ginmar's bid was sent to Cardinal Health in Ohio.  The parties entered into the Agreement that was drafted primarily in Ohio and was signed by Cardinal Health officials, who were headquartered in Dublin, Ohio.  (Compl. ¶   )

- In early 2005, Plaintiff Cantave attended some national operations and sales meetings of Cardinal Health held in Dublin, Ohio.  (Compl. ¶ 36) Plaintiffs contend that Ginmar's expectation that all Cardinal Health business units would order custom promotional products from Ginmar was borne, in part, out of those meetings.  *Id.*

- Plaintiffs allege that after the parties entered the Agreement, a "clique" of Cardinal Health employees located in Cardinal Health's Ohio headquarters sought to "sabotage" the Agreement and engaged in acts of discrimination, presumably in Ohio. (Compl. ¶¶ 47-52)

- Ginmar also contends that after encountering issues with regard to orders Ginmar believed that it should have received, she held various conversations with Cardinal Health employees who worked in the Dublin, Ohio office (Compl. ¶¶ 59-63)

- Ginmar also asserts that Cardinal Health promised Cantave a "three-year contract extension" at a meeting in Dublin, Ohio with Ginmar's Ohio representative. (Compl. ¶ 64)

- Ginmar also alleges that as part of Cardinal Health's scheme to use Ginmar for its own agenda, Cardinal Health had Cantave attend a gala event organized by the South Central Ohio Minority Business Council in 2006.  Cardinal Health allegedly wanted Cantave at the gala to help it compete for an award recognizing its commitment to diversity.  (Compl. ¶ 65)

In addition to these allegations, a number of other allegations set forth in Ginmar's complaint center around events or people located in Ohio. (*See also* Compl. ¶¶ 66-67, (discussions between Cardinal Health and Ginmar's Ohio representative regarding Ginmar's performance under the Agreement); Compl. ¶¶ 69, 47, 81 (allegations concerning Cardinal Health's decisions to use third party suppliers in Ohio) and Compl. ¶¶ 88-93 (allegations concerning the decision to initiate a new bidding process for promotional product vendors). Thus it is evident that the overwhelming majority of facts asserted in Plaintiffs' complaint occurred in Ohio.

**B.    Relative Ease of Access to Sources of Proof and Convenience of the Witnesses Favor Litigation of This Dispute In Ohio**

The convenience of witnesses is often the most important factor in determining whether a § 1404(a) transfer is appropriate. *See Denver & Rio Grande Western Ry. Co. v. Bhd. Of R.R. Trainmen,* 387 U.S. 556, 560 (1967) ("[V]enue is primarily a matter of convenience of litigants and witnesses"); *Kammin v. Smartpros, Ltd.,* Case No. 07 C 2665, 2007 U.S. Dist. LEXIS 75914 at *1 (N.D. Ill. 2007).   The relative ease of access to sources of proof for the parties and convenience to the many likely witnesses in this case also weighs heavily in favor of transferring this matter to Ohio. *Brother Int'l,* 2006 WL 1543275, at *4.

When deciding which venue is more convenient, a court considers "the number of witnesses in each forum; the nature, quality, and importance of the witnesses' testimony with respect to the issues of the case; the expense of transportation and the length of time the witnesses will be absent from their jobs; and whether the witnesses can be compelled testify." *Kammin,* 2007 U.S. Dist. LEXIS 75914 at *2, citing *S.C. Johnson & Son, Inc. v. Buzz Off Insect Shield, LLC,* No. 05 C 1046, 2005 U.S. Dist. LEXIS 15690 at *3 (N.D. Ill. June 28, 2005)

In this case, the allegations made in Plaintiffs' complaint concerning potential witnesses all favor transfer to Ohio. First, Ginmar's complaint specifically names over twenty Cardinal Health employees and alleges that they were involved in the parties' dispute. (Compl. ¶¶ 20-101) The overwhelming majority of those employees were based in Ohio at the time of the alleged activity. The location of this many potential witnesses in Ohio favors transfer of this case to the Ohio Court. *Doage v. Bd. of Regents*, 950 F. Supp. 258, 261 (N.D. Ill. 1997)(granting motion to transfer the case to the venue where most of the current and former employees who were likely witnesses resided).

Second, this case will involve testimony from a number of non-party witnesses, including many witnesses who dealt with Plaintiffs over the course of the parties' relationship. (*See* Declaration of Ronald House ¶ 3, attached hereto as Exhibit 2.) For example:

- In their complaint, Plaintiffs identify Mike Zabonik worked out of Cardinal Health's Dublin, Ohio office. Mr. Zabonik is no longer employed by Cardinal Health but resides in Ohio.

- Plaintiffs allege that Mr. Zabonik (a) became the new Director of Procurement in 2007 and attended a business review meeting with Ms. Cantave on February 19, 2007 (Compl. ¶ 78); (b) informed Ginmar that Cardinal Health had determined to conduct a bidding event and would be inviting Ginmar to bid on continuation of the provision of custom promotional items as the incumbent provider (Compl. ¶ 88); (c) stated that there had been inner turmoil with executives' compliance to follow the contract from the beginning of the contract (Compl. ¶ 92); "revealingly stated that he was unsure who had given RBC executives permission to order from different suppliers" (Compl. ¶ 92); (d) wrongly inferring that such "permission" was required. Mr. Zabonik will be called to rebut Plaintiffs' allegations and to place his actions and conversations in the proper context.

- Plaintiffs also identify Erin Smith who worked out of Cardinal Health's Dublin, Ohio office but who is no longer employed by Cardinal Health but Ms. Smith is believed to reside in Ohio.

- Plaintiffs allege that Ms. Smith was Manager of Strategic Sourcing at Cardinal Health and that she (a) forwarded an email that directed Cardinal Health executives to comply with the exclusive supplier agreement negotiated with Ginmar (Compl. ¶ 42); (b) sent an e-mail that purports to track non-compliant businesses spend by location and assured Ginmar that the locations would be held accountable (Compl. ¶ 43); (c)

received an email from Cardinal Health employee who asked Plaintiff Cantave to work with the Callard Company to send business to Callard. (Compl. ¶ 49) Defendant expects to call Ms. Smith to address Plaintiffs' allegations.

- Plaintiffs also name Malik Malone in their complaint. Mr. Malone is no longer employed by Cardinal Health and is believed to reside in Ohio.

- Plaintiffs allege that Mr. Malone, Cardinal Health's then Director of Corporate Diversity informed Plaintiff Cantave that Cardinal Health would welcome a bid from Ginmar on a national exclusive contract to provide all of Cardinal Health's requirements for promotional products and that Cardinal Health would give Ginmar a reasonable opportunity to earn the contract which would be of three years duration. (Compl. ¶ 26) Mr. Malone will be called to address Plaintiffs' allegations.

- Plaintiffs also identify Jennifer Conner in their complaint. Ms. Conner worked out of Cardinal Health's Dublin, Ohio office but she is no longer employed by Cardinal Health but is believed to reside in Ohio.

- Plaintiffs allege that Ms. Conner made several requests for quotes for samples for shirts from Ginmar and then decided to go with another vendor. (Compl. ¶ 59) Ms. Conner will be called to address Plaintiffs' allegations.

Witnesses who reside outside the subpoena power of this Court cannot be subpoenaed for trial in Illinois. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii). A number of the Ohio-based individuals who Plaintiffs name in their complaint are no longer employed by Cardinal Health. Of that number, at least four (Mr. Zabonik, Ms. Smith, Mr. Malone and Ms. Conner) are still believed to be located in Ohio. (Decl. of R. House ¶ 4) Their testimony will likely be crucial for Cardinal Health's proper defense of this matter. Yet, as former employees, these potential witnesses do not come under this Court's subpoena power and cannot be compelled to appear in Illinois for trial.

Another potential witness identified in Ginmar's complaint, Ms. Jen Walsh, is an employee of non-party Callard Company and also resides in Ohio. (Compl. ¶ 49) She cannot be compelled to testify in Illinois either. Nor can one of the most critical witnesses likely to be called, Ms. Cassandra Ward, a former Ginmar employee, who also is believed to reside in Ohio.

The location of the majority of non-party witnesses in one of the two districts will often tip the balance in favor of that district. *Apache Products Co. v. Employers Ins. of Wausau*, 154

F.R.D. 650, 655 (S.D. Miss. 1994)(venue transferred to location in which the majority of defendant's non-employee witnesses resided); *Bevil v. Smit Americas, Inc.,* 883 F. Supp. 168, 170 (S.D. Tex. 1995)(venue transferred because the majority of non-party witnesses reside outside of the subpoena power of the transferor court).  Thus, the location of the six non-party witnesses in this case, the most important factor in the venue analysis, clearly supports transfer to the Ohio court, where the live testimony of the witnesses may be compelled.

## IV.  THE TRANSFER OF PLAINTIFFS' CASE TO THE OHIO COURT IS IN THE INTEREST OF JUSTICE

The interests of justice also require that this matter be transferred to the Ohio Court for adjudication.    When considering the interest of justice courts focus on "the efficient administration of the court system." *Brother,* 2006 WL 1543275, at *1 (citing *Washington Nat'l Life Ins. Co. v. Calcasieu Parish Sch. Bd..* No. 05 C 2551, 2006 WL 1215413 at *8 (N.D. Ill. May 2, 2006).   These "public interest" considerations focus on such factors as "the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." *Brother,* 2006 WL 1543275, at *1.

Here, the Agreement is specifically governed by Ohio law.  Therefore, the Ohio Court is readily familiar with the law that must be applied to interpret the Agreement and to this dispute. Moreover, this case will likely proceed to trial more quickly in the Ohio Court than this one. Therefore, the interests of justice favor a transfer.

### A.    The Ohio Court Is More Readily Familiar With Ohio Law

Many courts hold that it is proper to transfer an action to permit a court that is familiar with the relevant law to resolve the dispute. *See Van Dusen v. Barrack,* 376 U.S. 612, 645 (1964) ("There is an appropriateness, too, in having the trial of a diversity case in a forum that is home with the state law that must govern the case, rather than having a court in some other

forum untangle problems in conflict of laws, and in law foreign to itself" (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)); *Orix Credit Alliance, Inc. v. Mid-south Materials Corp.*, 816 F. Supp. 230, 235 (S.D.N.Y. 1993) ("The parties agreed that their contracts are governed by New York law, and a diversity case should be tried in the 'forum that is at home the state law that governs the case'"); *TV-3, Inc. v. Royal Ins. Co of Am.*, 28 F. Supp.2d 407 (E.D. Tex 1998); *Nat'l Property Investors VIII v. Shell Oil Co.*, 917 F. Supp. 324, 330 (D.N.J.).

The Agreement expressly provides that it shall be governed by and construed in accordance with the laws of Ohio (Agmt. ¶ 13)("This Agreement shall be governed  and construed in accordance with the laws of the State of Ohio, excluding its conflict of laws provisions.")   In addition, it is evident from Plaintiffs' complaint that Plaintiffs intend to introduce evidence outside the Agreement.  The Ohio Court is in a better position to address Ohio common law regarding application of the parol evidence rule, the effect of the Agreement's integration clause, the effect of the Agreement on Plaintiffs' ability to pursue tort claims, the legal effect of alleged fraud on the Agreement and other matters regarding contract interpretation.

Plaintiffs also rely on the Ohio law for their claim that the Agreement is a requirements contract which obligated Cardinal Health to deal exclusively with Ginmar and purchase a minimum of $1.5 million in promotional products.  (Compl. ¶¶ 21, 97)  Therefore, the Ohio Court has an interest in interpreting that law in order to address the threshold issue that is central to this action: whether the Agreement is an exclusive, requirements contract.

Accordingly, the application of Ohio law strongly supports transfer of this matter to the Ohio Court.

### B.     The Ohio Court Will Timely Handle the Dispute

When evaluating which state is likely to proceed with the case faster, courts will also look at "(1) the median months from filing to disposition for civil cases and (2) the median months from filing to trial for civil cases." *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 904 (N.D. Ill. 2001). In addition, "common sense suggests that the litigation will move more quickly in a venue close to key witnesses and evidence, and where such witnesses are within the court's subpoena power." *Andrade v. Chase Home Fin., LLC,* 2005 WL 3436400, at *9 (N.D. Ill. Dec. 12, 2005).

The Judicial Caseload Profile of the United States District Courts[2] shows that from April 1, 2006 through March, 2007, the median time from case filing through trial was approximately 26 months in the Ohio Court and 29 months in this Court. Thus, a trial is likely to take place sooner in the Ohio Court. Additionally, as set forth above, the location of most witnesses and documentary evidence in Ohio make it likely that Plaintiffs' claims can be more expediently litigated in the Ohio Court.

---

[2] Available at http://www.uscourts.gov/caseload2007/tables/CO5Mar07.pdf

## CONCLUSION

WHEREFORE, Cardinal Health respectfully requests that the Court grant its Motion to Transfer and enter an order transferring Plaintiffs' action to the Ohio Court.


CARDINAL HEALTH, INC.


Dated: September 2, 2008
/s/ Lisa T. Scruggs
One of Its Attorneys


Barbara S. Steiner
Lisa T. Scruggs
Jenner & Block LLP
330 North Wabash Avenue
Chicago, Illinois 60611-7603
Telephone No. (312) 840-8681
Facsimile No. (312) 840-8781

## **CERTIFICATE OF SERVICE**

I, Lisa T. Scruggs, an attorney, certify that on September 2, 2008, I caused the foregoing

Defendant Cardinal Health Inc.'s Memorandum in Support of Motion to Transfer Venue, to be

served upon counsel, named below, by the Court's CM/ECF system.

Robert N. Stein
1450 Rockefeller Building
614 Superior Avenue N.W.
Cleveland, OH 44113
216-781-8040

Carl J. Mayer
Mayer Law Group LLC
1040 Avenue of the Americas, Suite 240
New York, NY 10018
212-382-4686

Steven E. Schwarz
The Law Offices of Steven E. Schwarz
2461 W. Foster Ave., #1W
Chicago, IL 60625
773-837-6134

Walter R. Dale
Law Offices of Walter R. Dale
105 W. Madison Ave., 23rd Floor
Chicago, IL 60602

_____/s/Lisa T. Scruggs_____
Lisa T. Scruggs

# EXHIBIT 1



# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

CARDINAL HEALTH, INC.     :
7000 Cardinal Place       :
Dublin, Ohio 43017       :
             :
   Plaintiff,       :  CASE NO. 2 : 08 cv 697
             :
   v.         :  JUDGE JUDGE WATSON
             :
GINMAR CORPORATE    :  MAGISTRATE JUDGE MAGISTRATE JUDGE KEMP
PROMOTIONS, INC.,     :
770 North Lasalle Street    :
Suite 801         :
Chicago, Illinois 60610    :
             :
   Defendant.      :

## COMPLAINT FOR DECLARATORY JUDGMENT

   Plaintiff Cardinal Health, Inc. states for its Complaint against Defendant Ginmar Corporate Promotions, Inc. as follows:

### PARTIES, JURISDICTION AND VENUE

   1.  Plaintiff Cardinal Health, Inc. ("Cardinal Health") is an Ohio corporation with its principal place of business located in the City of Dublin, Franklin County, Ohio. Cardinal Health and its affiliated companies are engaged in the business of providing products, services and technologies supporting the healthcare industry.

   2.  Defendant Ginmar Corporate Promotions, Inc. ("Ginmar") is an Illinois corporation with its principal place of business located in Chicago, Illinois. Ginmar is engaged in the business of supplying customized promotional products, such as corporate awards, plaques and logo items, to its customers.

3.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there exists diversity of citizenship between Plaintiff and Defendant and the amount in controversy in this case exceeds $75,000, exclusive of interest and costs.

4.     Venue lies in this Court pursuant to 28 U.S.C § 1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within this judicial district. Further, venue lies in this Court pursuant to 28 U.S.C § 1391(a)(1) and § 1391(c) because this Court may exercise jurisdiction over the corporate defendant Ginmar.

5.     This Court may exercise personal jurisdiction over Defendant Ginmar under Ohio R.C. 2307.382 because Cardinal Health's claim arises out of Ginmar's transacting business in Ohio and contracting to supply services or goods in Ohio.

6.     Cardinal Health brings this claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Fed.R.Civ.P. 57.  All conditions precedent for the filing of this action have occurred.

7.     There exists an actual controversy between Cardinal Health and Ginmar, parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  A declaratory judgment by this Court will terminate the controversy.

## FACTS COMMON TO ALL CLAIMS

**A.     Promotional Products Agreement.**

8.     On or about June 1, 2005, Ginmar and Cardinal Health entered into a Promotional Products Agreement ("Agreement"), pursuant to which Ginmar agreed to provide custom promotional products to Cardinal Health and its affiliates.  By its terms, the Agreement was limited to certain categories of promotional products on Cardinal Health's custom merchandise website.  A true and accurate copy of the Agreement is attached hereto as Exhibit A.

9.      Specifically, under Section 1 of the Agreement, Ginmar agreed to (1) provide custom apparel and hard products; (2) distribute the products as requested by Cardinal Health; and (3) provide reports pertaining to Cardinal Health's purchases and monthly savings.

10.     The term of the Agreement commenced on June 1, 2005 and extended for one year. Under Section 6 of the Agreement, the term automatically renewed for successive one-year periods unless either party delivered notice to the other party not less than 120 days before the end of the then current term.

11.     Further, under Section 7 of the Agreement, either party could elect to terminate the Agreement without cause or penalty. Such termination would be effective 120 days after a party delivered notice to the other party stating an election to terminate the Agreement.

12.     Section 11 of the Agreement limits the parties' liability. Specifically, neither party is liable to the other party for consequential or incidental damages arising out of or relating to the Agreement.

13.     Section 13A of the Agreement provides that the Agreement shall be governed by and construed in accordance with the laws of Ohio.

14.     Under Section 13C of the Agreement, the parties agreed that they read the Agreement and agreed to be bound by its terms. The parties further agreed that "[t]his is the complete and exclusive agreement and understanding between the Parties concerning the subject matter of this Agreement which supersedes all prior understandings, negotiations and proposals, written or oral. No modification, amendment, waiver, consent or discharge in connection with this Agreement will be binding unless it is in writing and signed by both Parties".

15.     The Agreement contains no exclusivity or requirements provision wherein Cardinal Health agreed to purchase all of it custom promotional products from Ginmar.

16.    The Agreement contains no provision requiring Cardinal Health to purchase a minimum amount of custom promotional products, nor does the Agreement provide a sales volume guarantee.

**B.    The Controversy**

17.    During the term of the Agreement, Cardinal Health purchased some custom apparel and hard products from other suppliers while continuing to purchase such products from Ginmar.

18.    In a demand letter dated June 29, 2007, Ginmar's counsel alleged that the Agreement was an exclusive contract under which Cardinal Health had agreed to purchase the custom promotional items covered by the Agreement only from Ginmar.

19.    Ginmar has asserted that the language of the "Ordering Procedures" set forth in Section 2 somehow renders the Agreement a requirements contract under which Cardinal Health was required to purchase all promotional items covered by the Agreement exclusively from Ginmar.

20.    Section 2 of the Agreement, provides, however, only that "Cardinal Health will place all orders with Ginmar via the internet, Fax or Email. Ginmar will provide an electronic catalog and paper catalog upon request, containing descriptions and images of the Products. Ginmar will issue a reorder notice to Cardinal Health either weekly or monthly, at Cardinal Health's election."

21.    Ginmar claims that Cardinal Health has breached the Agreement by failing to purchase promotional products covered by the Agreement exclusively from Ginmar.

22.    Ginmar has further asserted that the Agreement obligated Cardinal Health to purchase a minimum volume of custom promotional products from Ginmar. Specifically,

although it has not and cannot point to any specific language in the Agreement, Ginmar asserted that the Agreement entitled it to annual revenues of between $1,000,000 and $3,500,000.

23.    Although it has not and cannot point to any language in the Agreement, Ginmar has further asserted that the Agreement obligates Cardinal Health to purchase at least $1,500,000 in promotional items covered by the Agreement from Ginmar annually.

24.    Nothing in the Agreement obligates Cardinal Health to purchase a minimum volume of custom promotional products from Ginmar annually.

25.    In fact, the Agreement clearly contemplates varying potential purchase levels. Section 4 of the Agreement provides that Ginmar would pay Cardinal Health a "Rebate Amount" for each twelve month period during the term of the Agreement depending on the aggregate purchase price of products ordered by Cardinal Health from Ginmar.  Because the dollar amount of Cardinal Health's anticipated purchases was unknown, the Rebate Amount was calculated by multiplying the aggregate dollar amount of the purchase prices of all Products ordered by Cardinal Health, net of returns credited by Ginmar, during the annual period ("Annual Net Purchase Volume") by a percentage rebate as follows:

| Annual Net Purchase Volume | Rebate Percentage |
|---|---|
| < $1,000,000 | 0% |
| $1,000,000 - $2,500,000 | 1% |
| $2,500,000 - $3,500,000 | 1.5% |
| > $3,500,000 | 2% |

26.    Nevertheless, because Ginmar's annual revenues did not reach the volume to which it asserts entitlement under the Agreement, Ginmar claims that Cardinal Health is in breach of the Agreement.

27.    On January 28, 2008, Cardinal Health terminated the Agreement, effective April 30, 2008.

28.    Despite the fact that the Agreement contains no exclusivity provision, volume requirement or minimum purchase provision, Ginmar has threatened to file a lawsuit against Cardinal Health, alleging that Cardinal Health breached the Agreement by: 1) purchasing custom promotional products from other vendors; and 2) failing to purchase at least $1,500,000 in custom promotional product annually from Ginmar.

29.    On July 11, 2008, Ginmar renewed its threat to sue Cardinal Health, stating that it would file a complaint against Cardinal Health on July 21, 2008, unless the matter was resolved.

30.    Ginmar claims that Cardinal Health is liable to it for a sum in excess of $1,000,000 as a result of Cardinal Health's alleged breach of the Agreement.

31.    Cardinal Health has fully performed its obligations under the Agreement.

32.    Cardinal Health seeks a declaration under 28 U.S.C. § 2201 that the Agreement:

    a) is not a requirements contract under Ohio or other applicable law;

    b) contains no exclusivity provision requiring Cardinal Health to purchase custom promotional items subject to the Agreement only from Ginmar during the term of the Agreement;

    c) did not require Cardinal Health to purchase a minimum annual volume of the promotional items that are a subject of the Agreement; and

    d) did not require Cardinal Health to purchase a certain volume of custom promotional products annually from Ginmar.

33.    Cardinal Health seeks a further declaration under 28 U.S.C. § 2201 that:

    a) it was not a party to a requirements contract with Ginmar under Ohio or other applicable law;

b) it was not obligated under the Agreement to purchase the promotional items that are a subject of the Agreement exclusively from Ginmar during the term of the Agreement;

c) it was not required to purchase a minimum annual volume of the promotional items that are a subject of the Agreement; and

d) it was not required to purchase a certain volume of custom promotional products annually from Ginmar.

34.    Cardinal Health seeks a further declaration under 28 U.S.C. § 2201 that it has substantially performed its obligations under the Agreement and has no liability or further obligation to Ginmar thereunder or otherwise.

WHEREFORE, Plaintiff Cardinal Health, Inc. requests the following relief from this Court:

I.    A declaratory judgment that:

a. The Agreement is not a requirements contract under Ohio or other applicable law;

b. Cardinal Health was not a party to a requirements contract with Ginmar under Ohio or other applicable law;

c. The Agreement contains no exclusivity provision requiring Cardinal Health to purchase custom promotional items subject to the Agreement only from Ginmar during the term of the Agreement;

d. Cardinal Health was not obligated under the Agreement to purchase the promotional items that are a subject of the Agreement exclusively from Ginmar during the term of the Agreement;

e. The Agreement did not require Cardinal Health to purchase a minimum annual volume of the promotional items that are a subject of the Agreement;

f. Cardinal Health was not required to purchase a minimum annual volume of the promotional items that are a subject of the Agreement;

g.  The Agreement did not require Cardinal Health to purchase a certain volume of custom promotional products annually from Ginmar;

h.  Cardinal Health was not required to purchase a certain volume of custom promotional products annually from Ginmar; and

i.  Cardinal Health has substantially performed its obligations under the Agreement and has no liability or further obligation to Ginmar thereunder or otherwise.

II.  An award of costs and expenses; and

III.  Such other relief in law or equity to which Cardinal Health may be entitled.

Respectfully submitted,

/s/ Ronald L. House
Ronald L. House   (0036752)
Trial Attorney
Benesch, Friedlander, Coplan & Aronoff LLP
41 South High Street, Suite 2600
Columbus, Ohio  43215-3506
Telephone No. (614) 223-9338
Facsimile No. (614) 223-9330

Counsel for Plaintiff
Cardinal Health, Inc.

Of Counsel:
Barbara S, Steiner
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, Illinois 60611-7603
Telephone No. (312) 923-2611
Facsimile No. (312) 840-7611



# Promotional Products Agreement

This Promotional Products Agreement ("Agreement") is effective June 1, 2005 (the "Effective Date") between Ginmar Corporate Promotions, Inc. ("GINMAR"), an Illinois corporation with its principal place of business and notice address at 600 West Van Buren St., Suite 607, Chicago, IL 60607 and Cardinal Health, Inc., an Ohio corporation with its principal place of business and notice address at 7000 Cardinal Place Dublin, Ohio 43017, each a "Party" and, collectively, the "Parties."

Pursuant to the terms and conditions of this Agreement, GINMAR will provide promotional products, along with custom printed and electronic catalogs, electronic, interactive order entry, and distribution to Cardinal Health and its affiliates. Cardinal Health, Inc. and its affiliates shall be collectively referred to in this Agreement as "Cardinal Health."

## 1. Contract services

Subject to all other terms of this Agreement, GINMAR will, for promotional products managed by GINMAR ("Products"), provide agreed upon by both Parties the services necessary, to: (1) provide custom apparel and hard Products; (2) distribute the Products as requested; (3) provide GINMAR's standard management information reports pertaining to Products purchased by Cardinal Health and monthly savings reports.

Cardinal Health will not be responsible for any inventory items. There will not be any administrative fees for any Inventory Management Services.

This Agreement will cover the following categories of Cardinal Health's Custom Merchandise site:

- Apparel
- Novelties
- Promotional Office products
- Home products
- Sporting goods
- Travel accessories
- Promotional Electronics
- Promotional Writing instruments
- Recognition programs
- Gift books
- Promotional Food and beverage products
- Seasonal and holiday items

# Promotional Products Agreement

## 2. Ordering procedures

Cardinal Health will place all orders with GINMAR via the Internet, FAX or Email. GINMAR will provide an electronic catalog and paper catalog, upon request, containing descriptions and images of the Products.  GINMAR will issue a reorder notice to Cardinal Health either weekly or monthly, at Cardinal Health's election.

## 3. Pricing and payment terms

Cardinal Health will pay the price agreed upon for each type and quantity of the Products.  GINMAR will invoice Cardinal Health for the Products upon shipment of Products to Cardinal Health.  Each invoice will contain: (i) a description of the Products delivered, and (ii) quantity and unit price(s) and any information specified by individual operating units.

GINMAR  will bill for all Products monthly and payment will be due from Cardinal Health net thirty (30) days from the date of GINMAR 's invoice.

GINMAR guarantees a 17% reduction in cost based on previous paid price. New products will be benchmarked against current list price minus 17% discount or competitive pricing.

Upon request GINMAR will provide supplier manufacture's published list price to validate the 17% discount to Cardinal.

## 4. Rebate Program

The "Rebate Amount" for each twelve-month period ("Annual Period") during the Term shall be the dollar amount that is the product of (i) the aggregate dollar amount of the purchase prices of all Products ordered by Cardinal Health (net of returns credited by GINMAR) during that Annual Period (the "Annual Net Purchase Volume") multiplied by (ii) the percentage stated in the Rebate Percentage column in the table below in the row associated with the Annual Net Purchase Volume stated in the Annual Net Purchase Volume column in the table below.

| Annual Net Purchase Volume | Rebate Percentage |
|---|---|
| < $1,000,000 | 0% |
| $1,000,000 to $2,500,000 | 1% |
| $2,500,001 to $3,500,000 | 1.5% |
| > $3,500,000 | 2% |

# Promotional Products Agreement

Within fifteen (15) days after the end of each Annual Period, GINMAR shall (i) pay Cardinal Health a payment in the amount of the Rebate Payment for that Annual Period and (ii) deliver to Cardinal Health a statement that clearly and accurately states the basis for GINMAR's calculation of the Rebate Payment payable for that Annual Period.

If this Agreement is terminated and the period of the Term (the "Final Period") following the end of the immediately-preceding Annual Period is less than one year, then the Final Period shall constitute an Annual Period for purposes of this Section 4.

### 5.  Returns and credits

If Cardinal Health desires to return any Product for credit (each, a "Returned Product"), then Cardinal Health shall notify GINMAR and shall return the Returned Product to the GINMAR distribution center that released the Returned Product.  For each Returned Product that Cardinal Health returns in re-saleable, re-inventoriable condition within 30 days of the date that Cardinal Health originally received the Returned Product, GINMAR shall credit a full refund of the purchase price of the Returned Product to the Cardinal Health cost center that purchased the Returned Product on the subsequent month's summary invoice.

If a Returned Product was shipped in error by GINMAR, then GINMAR shall incur the freight costs associated with the return.  If the error was on the part of Cardinal Health, Cardinal Health will be billed for the freight associated with the return.

"Specialty orders" for Cardinal Health can only be returned if the error was on the part of GINMAR.

### 6.  Term

This term of this Agreement ("Term") shall commence on the Effective Date and shall extend for an initial period of one (1) year.  The Term shall automatically renew for a successive one-year periods unless either Party delivers notice to the other Party not less than one hundred twenty (120) days before the end of the then-current Term.

### 7.  Termination

Either Party may by notice elect to terminate this Agreement without cause or penalty.  A termination pursuant to this paragraph shall be effective 120 days after a Party delivers notice to the other Party stating an election to terminate this Agreement pursuant to this paragraph.  GINMAR will, as rapidly as possible, ship all Products held in storage, complete and ship all work in process, and bill

# Promotional Products Agreement

Cardinal Health for the Products, the completed work in process and for any freight charges incurred. Cardinal Health agrees to pay such invoice within thirty (30) days of receipt. Both parties shall continue to honor the terms of the Agreement through the end of the Term.

## 8. Title

Title to each Product shall pass to Cardinal Health when GINMAR consigns the Product to a third party carrier for delivery to Cardinal Health.

## 9. Risk of loss

GINMAR shall procure insurance on behalf of Cardinal Health for each Product consigned to a third party carrier for delivery to Cardinal Health. GINMAR will assume risk of loss of all Products and Return Products when they are in GINMAR's custody and control.

## 10. Product Warranties

A.   GINMAR warrants that all Products provided by GINMAR to Cardinal Health pursuant to this Agreement shall be free from defects in material and workmanship and shall conform to all Cardinal Health specifications. If Products do not conform to this limited warranty, GINMAR's sole obligation and Cardinal Health's sole remedy will be the substitution of conforming Products.

## 11. Limitation of Liability

NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES ARISING OUT OF OR RELATING TO THIS AGREEMENT, EVEN IF SUCH PARTY IS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## 12. Notices

A.   All notices to GINMAR shall be sent to the address that appears on the first page of this agreement, Attn: Ms. Gina Cantave.
B.   All notices to Cardinal Health shall be sent to the address that appears on the first page of this Agreement.
C.   All notices shall be deemed given when received via certified or registered mail postage prepaid or a receipted delivery service.

## 13. Miscellaneous

A.   This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio, excluding its conflict of laws provisions.

# Promotional Products Agreement

B.   This Agreement will work to the benefit of and be binding upon the parties, their successors and assigns; provided, however, that neither party may assign this Agreement without the express written consent of the other party.

C.   Each Party acknowledges that it has read this Agreement and agrees to be bound by its terms.   This is the complete and exclusive agreement and understanding between the Parties concerning the subject matter of this Agreement which supersedes all prior understandings, negotiations and proposals, oral or written.   No modification, amendment, waiver, consent of discharge in connection with this Agreement will be binding unless it is in writing and signed by both Parties.

D.   If any provision of this Agreement should, for any reason, be held invalid or unenforceable, the remainder of the Agreement shall not be affected.  Instead, this Agreement shall be construed as if such invalid provision was not part of the Agreement.

E.   Each party will at all times, both during and after the term of this Agreement, retain sole right, title and interest in and to all intellectual property created by it prior to entering into or during the term of this Agreement; however, at any time upon Cardinal Health's request or upon termination of this Agreement for any reason, GINMAR   shall provide to Cardinal Health all artwork and composition for Products provided under this Agreement, including but not limited to electronic files containing the same (together, "Source Materials") and all right, title and interest to such Source Materials will vest in Cardinal Health.

F.   Except as required by law, GINMAR shall not disclose to a third party the terms of or issue any public statement regarding this Agreement or the relationship created by this Agreement without Cardinal Health's prior written approval.

## 14. Confidentiality of Cardinal Health Information

"Confidential Information" shall mean all information furnished to GINMAR by Cardinal Health related to this Agreement.  Information furnished or obtained by GINMAR shall not constitute Confidential Information if, at the time GINMAR receives the Information, the Information was (i) previously known to GINMAR as demonstrated by documents retained by the GINMAR in the ordinary course of its business and that existed prior to the GINMAR's receipt of the information from Cardinal Health or (ii) generally available to the public.

GINMAR shall not at any time use Confidential Information for any purpose other than to the limited extent necessary to perform this Agreement.  The obligations created by this Section shall survive the termination, expiration, or cancellation of

# Promotional Products Agreement

this Agreement.

GINMAR shall not disclose Confidential Information to any third party, except that GINMAR may disclose Confidential Information (i) upon receipt of specific prior written consent from Cardinal Health or (ii) if GINMAR is legally compelled to disclose the Confidential Information and, in that event, subject to a confidentiality agreement with the receiving party and only after providing sufficient advance notice to Cardinal Health of the proposed disclosure to permit Cardinal Health a reasonable opportunity to assert its rights in confidentiality. GINMAR shall protect Confidential Information with the same degree of security afforded GINMAR's proprietary information and, in no event, with less than reasonable care. The obligations created by this Section shall survive the termination, expiration, or cancellation of this Agreement.

GINMAR shall disclose Confidential Information to GINMAR's directors and/or employees only to the extent that such disclosure is reasonably necessary to perform this Agreement.

Upon notice from Cardinal Health after termination, expiration, or cancellation of this Agreement, GINMAR shall promptly return or destroy all tangible items in its possession containing the Confidential Information and shall delete all electronic media containing the Confidential Information. GINMAR shall certify to Cardinal Health in writing that it has complied with the obligations of this Section. For the sole purpose of evidencing compliance with this Section 14, GINMAR may maintain a secure file containing a single copy of all items returned to Cardinal Health.

If GINMAR breaches any obligation created by this Section14, then Cardinal Health shall, without being required to demonstrate damage or irreparable harm or the posting of any bond, be entitled to temporary restraining orders, temporary and permanent injunctions, specific performance, and/or other equitable relief as necessary to enjoin or equitably remedy the breaching conduct. The availability or election of equitable remedies shall be in addition and without prejudice to any other remedies available to Cardinal Health.

15. **Compliance with laws**
    A. GINMAR shall comply with all federal, state and local laws and regulations applicable to its operations, including, but not limited to, those dealing with employment opportunity and affirmative action including Executive Order 12246 (Equal Opportunity), 38 U.S.C. §4212(a) (Affirmative Action for Disable veterans and Veterans of the Vietnam Era), and 29 U.S.C. §793 (Affirmative Action for Workers with Disabilities), and any amendment and applicable regulations pertaining thereto. In addition, GINMAR shall comply with all terms of 48 C.F.R. §52.244-6 (subcontracts for Commercial Items and Commercial Components) (including the requirement of including this provision in subcontracts awarded under this contract), 15 U.S.C. §637(d) (2) and (3) (utilization of Small Business concerns), and such provision is hereby incorporated into this Agreement as if

# Promotional Products Agreement

fully set forth herein. In accordance with the provisions of 48 C.F.R. §52,209-6, GINMAR certifies that neither it nor its principals was or is debarred, suspended, or proposed for debarment by the Federal Government. In addition, GINMAR represents and warrants that it complies with all federal, state, local and other applicable laws, regulations, conventions or treaties prohibiting any form of child labor or other exploitation of children in the manufacturing and delivery of GINMAR's products or services.

The foregoing shall be an agreement by and between Cardinal Health and GINMAR, effective as of the date of execution by both parties.

GINMAR CORPORATE PROMOTIONS, INC.

By _____

_____
Date

Gina Cantave
Vice President of Sales

CARDINAL HEALTH, INC.

By _____

_10/13/05_____
Date

Name: Mark Hartman
Title: Exec.V.P, Strategic Sourcing

CARDINAL HEALTH, STRATEGIC SOURCING
CONTRACT SIGN-OFF

Contract Approval Form – cover sheet for Contract
(Attach two original Contracts to this form)

_____
SUPPLIER

_____
CATEGORY LEADER

10 / 11 / 05
_____
DATE

I have reviewed the contents of this contract/agreement on the date indicated by my initials, and I concur with the content, acknowledge Cardinal Health's responsibilities and capabilities, and verified the pricing proposed therein. I have also reviewed and agree with the terms and conditions set forth in this agreement.

| | | |
|---|---|---|
| _John Erickson_ | _____ | 10/11/05 |
| Legal Counsel | Initials | Date |
| _Leslie Morgan_ | _____ | 10/11/05 |
| Category Leader | Initials | Date |
| | | |
| _____ | _____ | _____ |
| Knowledge Center | Initials | Date |
| | | |
| Robert D. Wagner | RDW | 10/13/05 |
| VP – Strategic Sourcing | Initials | Date |
| | | |
| Mark A. Hartman | MH | 10/13/05 |
| EVP – Corp Service & SS | Initials | Date |

Please obtain original signatures from the other party and return the original fully executed contract to the Knowledge Center.

CARDINAL HEALTH, STRATEGIC SOURCING
CONTRACT SIGN-OFF

Contract Comment Form

———————————————————
SUPPLIER

———————————————————
CATEGORY LEADER

———————————————————
DATE

Legal Counsel: _____

_____

_____

Category Leader: _____

_____

_____

Knowledge Center: _____

_____

_____

Bob Wagner, VP SS: _____

_____

_____

Mark Hartman, EVP SS: _____

_____

_____

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GINMAR CORPORATE PROMOTIONS, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | CASE NO.  08 CV 4109 |
| v. | ) ) | Judge John W. Darrah |
| CARDINAL HEALTH, INC. | ) ) | Magistrate Judge Cox |
| Defendant. | ) ) | |

## DECLARATION OF RONALD HOUSE

I, Ronald House, declare as follows:

1.    I am one of the attorneys for Defendant Cardinal Health in this action.  I have personal knowledge as to each fact stated in this declaration.

2.    I obtained affidavits from several Cardinal Health employees.  Attached hereto as Exhibits A-D are the Affidavits of Cathy Mock (Ex. A), Jennifer McEwen (Ex. B), Elizabeth Frazier (Ex. C), and Betty Blumenauer (Ex. D).

3.    In addition to calling present employees as witnesses, Cardinal Health intends to call Malik Malone, Michael Zabonik, Lamont Robinson, Erin Smith, Jennifer Conner, Jen Walsh, Becky Hoag and Cassandra Ward as witnesses.

4.    On information and belief, at least six non-party witnesses are still located in Ohio.

I declare under penalty of perjury under the laws of the State of Ohio that the foregoing is true and correct.

Executed this 2nd day of September, 2008 at Dublin, Ohio.

_____
Ronald House

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CARDINAL HEALTH, INC.  :
          :
   Plaintiff,    :  CASE NO.  2:08cv697
          :
   v.      :  JUDGE WATSON
          :
GINMAR CORPORATE   :  MAGISTRATE JUDGE KEMP
PROMOTIONS, INC.,    :
          :
   Defendant.   :

## AFFIDAVIT OF CATHY MOCK

STATE OF OHIO    )
         ) ss:
COUNTY OF FRANKLIN )

   Now comes Cathy Mock who, being first duly sworn according to law, deposes and says

that she is employed as a Director of Procurement Services for Cardinal Health. Inc. ("Cardinal")

in Dublin, Ohio and further states as follows on personal knowledge and upon a review of business

records kept in the ordinary course of Cardinal's business.

   1.  I am aware that Ginmar Corporate Promotions, Inc. ("Ginmar") supplied certain

custom promotional products to Cardinal from 2005 to 2007.

   2.  I have been employed as Director of Procurement Services since October 1, 2007

and, as such, I am responsible for Cardinal's overall supply diversity efforts.

   3.  Lamont Robinson was employed by Cardinal as a Director, Supplier Diversity and

would have knowledge of contract performance issues and problems Cardinal had with Ginmar.

Mr. Robinson's office was located in McGaw Park, Illinois.  Mr. Robinson is no longer employed

by Cardinal and I understand that she now works and resides in Texas.

4.    Malik Malone was employed by Cardinal as a Director, Supplier Diversity prior to Mr. Robinson and would have knowledge of the parties' communications and performance. Mr. Malone is no longer employed by Cardinal and I understand that he now resides in Ohio.

5.    Michael Zabonik was employed as Director of Strategic Sourcing for Cardinal Health in 2007 and 2008 out of Cardinal Health's Dublin, Ohio office. Mr. Zabonik is no longer employed by Cardinal Health but I understand that he still resides in Ohio.

FURTHER AFFIANT SAYETH NAUGHT.

CATHY MOCK

SWORN TO BY ME, and subscribed in my presence, this 2nd day of September, 2008.

Notary Public

Expiration: My commission has no expiration date.
Ronald L. House
Attorney at Law

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARDINAL HEALTH, INC. | : | |
| | : | |
| Plaintiff, | : | CASE NO. 2:08cv697 |
| | : | |
| v. | : | JUDGE WATSON |
| | : | |
| GINMAR CORPORATE | : | MAGISTRATE JUDGE KEMP |
| PROMOTIONS, INC., | : | |
| | : | |
| Defendant. | : | |

<u>AFFIDAVIT OF JENNIFER McEWEN</u>

STATE OF OHIO        )
                     )   ss:
COUNTY OF FRANKLIN   )

Now comes Jennifer McEwen who, being first duly sworn according to law, deposes and says that she is employed as a Supplier Relations Manager for Cardinal Health, Inc. ("Cardinal Health") in Dublin, Ohio and further states as follows on personal knowledge and upon a review of business records kept in the ordinary course of Cardinal's business.

1.      I am aware that Ginmar Corporate Promotions, Inc. supplied certain custom promotional products to Cardinal Health from 2005 to 2007.

2.      From approximately October, 2006 to October, 2007 I was a Meeting Planner with the Meetings and Events Department of Cardinal Health in Dublin, Ohio. As such, I was responsible for the development, planning and implementation of internal and external meetings, events, and trade shows.

3.      In my position as Meeting Planner, I had occasion to engage in communications with Ginmar regarding the supply of promotional products to Cardinal. Cassandra Ward represented herself to me as the local representative of Ginmar. As I recall, Ms. Ward lived in the

Columbus, Ohio area and used her home as her office.  I personally had two (2) meetings in Dublin, Ohio with Ms. Ward relating to the ordering and supply of custom products by Ginmar to Cardinal Health.  I also had approximately three (3) telephone conversations with Ms. Ward relating to the ordering and supply of custom products to Cardinal Health.  I ordered promotional products from Ginmar from my Dublin, Ohio office.

4.      Cardinal purchased custom products from vendors other than Ginmar of the product type that Ginmar would also supply to Cardinal.

5.      Becky Hoag was employed by Cardinal and would have knowledge of contract performance issues Cardinal had with Ginmar.  Ms. Hoag was a former co-worker in the Meetings and Events department and was the predecessor in ordering promotional products for the Retail Business Conference.  Ms. Hoag is no longer employed by Cardinal and I understand that she now resides in Nevada.

FURTHER AFFIANT SAYETH NAUGHT.


_____
JENNIFER McEWEN

SWORN TO BE ME, and subscribed in my presence, this _28_ day of August, 2008.


_____
Notary Public

Expiration: _2-10-10_____

2

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

CARDINAL HEALTH, INC.      :
      :
      **Plaintiff,**      :     **CASE NO.  2:08cv697**
      :
      **v.**      :     **JUDGE WATSON**
      :
**GINMAR CORPORATE**      :     **MAGISTRATE JUDGE KEMP**
**PROMOTIONS, INC.,**      :
      :
      **Defendant.**      :

### AFFIDAVIT OF ELIZABETH FRAZIER

STATE OF OHIO      )
      )   ss:
COUNTY OF FRANKLIN  )

Now comes Elizabeth Frazier who, being first duly sworn according to law, deposes and says that she is employed as a Director of Operations Analytics for Plaintiff Cardinal Health. Inc. ("Cardinal Health") in Dublin, Ohio and further states as follows on personal knowledge and upon a review of business records kept in the ordinary course of Cardinal's business.

1.    I am aware that Ginmar Corporate Promotions, Inc. supplied certain custom promotional products to Cardinal Health from 2005 to 2007.

2.    From approximately March, 2005 through December, 2007 I was an Implementation Manager / Category Manager for Strategic Sourcing / Procurement Services for Cardinal Health and as such, I was responsible for the implementation of supplier agreements that had been negotiated by others on behalf of the Cardinal Health corporation and later, I was responsible for the sourcing, negotiation and implementation of new supplier agreements on behalf of Cardinal Health.

3.    While I was a Category Manager, Erin Smith was also an Implementation Manager in Strategic Sourcing for Cardinal Health. Ms. Smith and I were peers during this time, both reporting to Terri Stentz, Director of Implementation for Strategic Sourcing. Ms. Smith would have knowledge of the contractual relationship between Ginmar and Cardinal Health and performance issues with Ginmar. Ms. Smith is no longer employed by Cardinal Health. I believe that Ms. Smith still resides in the Columbus, Ohio area.

FURTHER AFFIANT SAYETH NAUGHT.

_____
ELIZABETH FRAZIER

SWORN TO BY ME, and subscribed in my presence, this 2ND day of September, 2008.



**Kathy O. Hupp**
Notary Public, State of **Ohio**
My Commission Expires
Feb 10, 2010

_____
Notary Public

Expiration: ___2·10·10___

2

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARDINAL HEALTH, INC. | : | |
| | : | |
| Plaintiff, | : | CASE NO. 2:08cv697 |
| | : | |
| v. | : | JUDGE WATSON |
| | : | |
| GINMAR CORPORATE | : | MAGISTRATE JUDGE KEMP |
| PROMOTIONS, INC., | : | |
| | : | |
| Defendant. | : | |

## AFFIDAVIT OF BETTY BLUMENAUER

STATE OF OHIO          )
                                        )   ss:
COUNTY OF FRANKLIN   )

Now comes Betty Blumenauer who, being first duly sworn according to law, deposes and says that she is employed as a Director of Meetings and Events for Cardinal Health. Inc. ("Cardinal") in Dublin, Ohio and further states as follows on personal knowledge and upon a review of business records kept in the ordinary course of Cardinal's business.

1.      I am aware that Ginmar Corporate Promotions, Inc. ("Ginmar") supplied certain custom promotional products to Cardinal from 2005 to 2007.

2.      I have been employed as a Director of Meetings and Events since approximately 2002 and, as such, I am responsible for supporting events for Cardinal employees. I engage in contract negotiation, arranging meeting logistics, and ordering gifts and awards, among other things.

3.      I personally ordered custom gifts and awards on behalf of Cardinal from Ginmar for use in Cardinal's operations in Ohio.  I communicated orders for the products through telephone calls from my Dublin, Ohio office to Ginmar's Gina Cantave and Vickie Chester at Ginmar's

Illinois office.  I also communicated orders for products through Ginmar's Ohio representative, Cassandra Ward.  Ginmar caused delivery of the products to Cardinal's Dublin, Ohio office.

4.    I am aware of the allegations that Ginmar has made in its complaint against Cardinal and against me personally.  While I am informed that now is not the time to respond to the allegations stated in the Complaint, I submit this affidavit regarding the location of an individual identified in Ginmar's Complaint as being involved in some manner with Cardinal's relationship with Ginmar.

5.    Jen Walsh, a business acquaintance of mine through Cardinal, is identified in the Complaint.  Ms. Walsh will have information to contradict some of the allegations made against me in this matter.  Ms. Walsh, as I understand it, is an owner of the The Callard Company, a company located in the Columbus, Ohio area.  I understand that Ms. Walsh resides in the Columbus, Ohio area.

FURTHER AFFIANT SAYETH NAUGHT.

BETTY BLUMENAUER

SWORN TO BY ME, and subscribed in my presence, this 27th day of August, 2008.

Notary Public

Expiration: _8-19-2009_

DIANE CENNAME
Notary Public, State of Ohio
My Commission Expires 08/19/2009

2